IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DEON C. STAFFORD, SR.,              :
                                    :
              Plaintiff             :
                                    :
       v.                           :    CIVIL NO. 4:CV-13-2026
                                    :
JOHN WETZEL, ET AL.,                :    (Judge Brann)
                                    :
              Defendants            :

## Memorandum

September 21, 2016

## Background

Deon C. Stafford, Sr.,  an inmate presently confined at the State

Correctional Institution, Houtzdale, Pennylvanmia (SCI-Houtzdale) filed this pro

se civil rights action regrading  his prior confinement at the State Correctional

Institution, Dallas, Pennsylvania (SCI-Dallas).  By Order dated June 11, 2014,

Plaintiff's motion to amend was granted and his proposed Amended Complaint

(Doc. 14-1) accepted.

Named as Defendants therein are the following SCI-Dallas officials:

Superintendent Jerome Walsh; Major Gary Gordon; Captain Martin; Unit

1

Manager Mick Brueninger; Foreman Ron Scavone; Lieutenant Patterson;[1] and

Correctional Officers Bobowicz, Yetter, Beers, and Tipler.[2]  According to the

Amended Complaint, in October 2012 Plaintiff was subjected to sexual advances,

comments,  and harassment by Defendants Beers and Tipler.  See  Doc. 14-1, ¶ IV.

The alleged misconduct was reported to prison officials including Unit Manager

Brueninger, who failed to take any action because Tipler was "protected."   Id. at ¶

2.

Plaintiff next states that on October 28, 2012, he told CO Tipler that he was

keeping a written log of that Defendant's sexual advances and would file a

grievance if Tipler continued the abuse.   Tipler purportedly responded by

threatening Stafford with daily cell searches if the inmate initiated a grievance

against him.

One day later, Stafford's cell was allegedly ransacked by Defendants Yetter

and Bobowicz "for security."  Id. at ¶ 3.  It is alleged that some of Plaintiff's

grievances (one he was preparing against Tipler and one on behalf of a fellow

---

[1] Patterson was listed as an Original Defendant but not listed as being a defendant in the Amended Complaint.  However, there is a claim asserted against him in the body of the Amended Complaint.

[2] The parties' submissions include different spellings of some of the Defendants' names.

prisoner), personal legal pleadings and his log of Tipler's actions were confiscated during the search.[3]   Stafford was subsequently told that Captain Martin and Lieutenant Patterson had made a copy of the written log and that Martin had threatened the Plaintiff with disciplinary confinement if the inmate continued to pursue his legal remedies or those of other inmates.

On October 30, 2012, Plaintiff filed a grievance against Tipler, Bobowicz, and Yetter.  The next day, it is asserted that Unit Manager Bruninger threatened Stafford with both a disciplinary confinement for trying to sue him.  Plaintiff further maintains that Major Gordon threatened him with a transfer on November 2, 2012, if he filed any more grievances or lawsuits.  Later that same day,  the Plaintiff claims that he was subjected to a retaliatory transfer to another housing unit.

On November 21, 2012, Stafford initiated a grievance alleging retaliation by Unit Manager Bruninger.   Five days later, Major Gordon allegedly threatened Stafford with disciplinary confinement and a transfer if he didn't withdraw his grievances against Tipler and Bruninger.   Over the next few months (December, 2012-March, 2013) , the Plaintiff was purportedly subjected to repeated urine

---

[3]  Stafford admits that some of those documents were returned to him later that same day by Defendant Bobowicz.

testing, cell and pat down searches which were ordered by Lieutenant Martin. Even though Plaintiff filed a grievance against Martin the retaliation allegedly continued and included verbal threats to drop his grievances and negative work reports by Defendant Foreman Scavone (apparently Plaintiff's work supervisor) and an eventual loss of Plaintiff's institutional employment.

It is also alleged that Correctional  Officer Beers would visit the Plaintiff (between March-May, 2013) on a weekly basis with messages from Gordon or Martin indicating that the retaliation would cease if Plaintiff dropped his grievances.[4]  On May 6, 2013, Stafford was transferred to another housing unit allegedly because he filed a grievance against Gordon.  The Amended Complaint seeks compensatory and punitive damages as well as injunctive relief.  See Doc. 14-1, ¶ V.

By Memorandum and Order dated February 5, 2015, Defendants' motion to dismiss less than all the claims raised in the Amended Complaint was partially granted.  See  Doc. 31.  Dismissal was granted in favor of Original Defendant SCI-Dallas Deputy Superintendent Lawrence Mahally and with respect to the damage claims against the Defendants in their official capacities.  Second,

---

[4]  Stafford adds that he filed four (4) grievances against Scavone for making threats.

Plaintiff's claims of unconstitutional denial of access to the court and verbal harassment were dismissed with the exception of the allegations that those actions were part of retaliatory mistreatment by the Remaining Defendants.  Dismissal was also granted with respect to the allegations of due process and equal protection violations.

Following disposition of Defendants' motion to dismiss, an answer to the surviving claims of retaliatory mistreatment (including cell searches, cell transfers, verbal abuse and confiscation of legal materials)  was filed.  Plaintiff's motion requesting leave to submit a  supplemental complaint was thereafter denied.  Presently pending is Remaining Defendants motion (Doc. 44) seeking entry of summary judgment.  The opposed motion is now ripe for consideration.

**Discussion**

Remaining Defendants contend that they are entitled to entry of summary judgment on the grounds that Plaintiff failed to exhaust his available administrative remedies with respect to his surviving claims.  They further contend that a viable claim of retaliation has not been alleged.

**Summary Judgment**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); <u>See</u> <u>also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 231-32 (3d

Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the

suit under the applicable law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

(1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary

basis that would allow a reasonable fact-finder to return a verdict for the non-

moving party.  <u>Id</u>. at 248.  The court must resolve all doubts as to the existence of

a genuine issue of material fact in favor of the non-moving party.  <u>Saldana</u>, 260

F.3d at 232; <u>see</u> <u>also</u> <u>Reeder v. Sybron Transition Corp.</u>, 142 F.R.D. 607, 609

(M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered

evidence of asserted facts.  <u>Versarge v. Township of Clinton</u>, 984 F.2d 1359, 1370

(3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to

support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint.  <u>See</u> <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its]

own affidavits, or by the depositions, answers to interrogatories, and admissions

on file, designate specific facts showing that there is a genuine issue for trial."  <u>Id</u>.

(internal quotations omitted); <u>see</u> <u>also</u> <u>Saldana</u>, 260 F.3d at 232 (citations omitted).

Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Administrative Exhaustion**

Remaining Defendants acknowledge that Plaintiff exhausted three (3) administrative grievances.[5]  The exhausted grievances addressed the May 6, 2013 cell move; falsification of work performance reports; and his December 10, 2013 job dismissal.  However, they assert that none of the exhausted grievances requested monetary relief.  As a result, the summary judgment motion concludes that such relief cannot be sought from this Court.

They add that Stafford's claims of harassment by Defendant Tipler; an improper cell search on October 29, 2012; a retaliatory cell transfer on November

---

[5]  Plaintiff acknowledges that the grievance procedure was available to him while he was at SCI-Dallas.  See Doc. 48, p. 2.  Stafford also asserts that he filed and exhausted multiple grievances.

2, 2012; retaliatory urine testing and cell searches; verbal threats by Defendant Beers; and a canceled cell move on June 16, 2013 were not included in the exhausted grievances and as such should not be allowed to proceed.  See  Doc. 45, p. 7.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001); see also Porter v. Nussle, 534 U.S. 516, 529-532 (2002).  The United States Court of Appeals for the Third Circuit in Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), held that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead." See also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies).  Rather, it is the burden of a defendant asserting the defense to plead and prove it.  Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

8

Entry of dismissal is appropriate when a prisoner litigant has failed to exhaust his available administrative remedies before bringing a civil rights action. See generally Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199, 219 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained in Spruill, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available

administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations.  Woodford v. Ngo, 548 U.S. 81 (2006).

The Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement.  Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (citing Nyhuis, 204 F.3d at 75.  A subsequent decision reiterated its "no futility" exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected.  Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir.  2006).  "Sensitive" subject matter or "ear of retaliation" have been rejected as grounds for excusing a prisoner's failure to exhaust."  Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

A Consolidated Inmate Grievance Review System has been established by the Pennsylvania Department of Corrections ("DOC").[6] Section V of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement."  See Doc. 29, p. 8.  It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2)

---

[6] The DOC's grievance system has been periodically amended.

avenues of appeal.  Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent.  A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court.  However, an improperly submitted grievance will not be reviewed.

## Non-Exhausted Claims

As noted above, according to the Remaining Defendants, Stafford's claims of harassment by Defendant Tipler; an improper cell search on October 29, 2012; a retaliatory cell transfer on November 2, 2012; retaliatory urine testing and cell searches; verbal threats by Defendant Beers; and a canceled move on June 16, 2013 were not included in any exhausted grievances and therefore those

allegations are subject to dismissal as being unexhausted.  See Doc. 45, p. 7.  It is undisputed that the DOC had an administrative grievance procedure in place during the relevant time period.  Fuerthermore, in support of the non-exhaustion argument, a declaration under penalty of perjury by SCI-Dallas Superintendent's Assistant Robin Lucas has been submitted.  See Doc. 47, p. 3.  Lucas, who serves as the prison's Grievance Coordinator,  asserts that Plaintiff filed Grievance 434647 regarding the October 29, 2012 cell search, retaliation and sexual harassment by Tipler.  However, the grievance was rejected and Plaintiff did not appeal the rejection to SOIGA.  See id. at ¶ 13.

According to Lucas, Plaintiff also filed Grievance 434942 claiming alleged retaliatory cell searches by Tippler.  Lucas similarly avers that this grievance was denied at the first administrative level and the denial was not appealed to SOIGA.  See id. at ¶ 17.  A grievance was also initiated by Plaintiff, No. 468102 regarding his allegation that a planned cell move on June 16, 2013 was improperly cancelled.  See id. at ¶ 22.  Following the denial of this grievance, Plaintiff again failed to pursue a final administrative appeal to SOIGA.

Lucas further states that Plaintiff also initiated Grievance 437478 alleging a purported retaliatory November 2012 cell transfer by Unit Manager Bruninger. This grievance was also denied at the initial level and there was no final

12

administrative appeal to SOIGA.  See id. at ¶ 21.  Although Lucas concedes that

Plaintiff fully exhausted three administrative grievances, the declarant concludes

by pointing out that Stafford never initiated any grievances pertaining to his

pending allegations of retaliatory urine testing and cell searches.  See id. at ¶ 43.

Moreover, the inmate never initiated any grievance against Correctional Officer

Beers.  See id. at ¶ 42.  Attached to Lucas' declaration is a copy of the DOC's

grievance policy, effective December 8, 2010, as well as copies of the relevant

grievances and responses.

The undisputed evidence submitted by Remaining Defendants satisfies their

burden of establishing that Plaintiff did not fully exhaust his available DOC

administrative remedies prior to initiating this action with respect to the following

claims:  harassment by Defendant Tipler; an improper cell search on October 29,

2012; a retaliatory cell transfer on November 2, 2012; retaliatory urine testing and

cell searches; verbal threats by Defendant Beers; and a canceled move on June 16,

2013.  Given that Plaintiff exhausted his administrative remedies with respect to

other claims during the same time period, there is no basis for a determination that

he should be excused from compliance with the administrative exhaustion

requirement.  Accordingly, the request for entry of summary judgment on the

basis of non-exhaustion of available administrative remedies will be granted with

respect to those allegations.

**<u>Monetary Relief</u>**

As previously discussed, Remaining Defendants concede that Stafford's retaliation claims that he was subjected to: (1) an unwarranted cell move on May 6, 2013; (2) falsification of work performance reports; and (3) a December 10, 2013 dismissal from institutional employment were administratively exhausted. <u>See</u> Doc. 45, p. 8.  However, they argue that there was not proper exhaustion of Plaintiff's pending requests for monetary damages because such relief was not sought in those three exhausted grievances.  In support of their argument, Remaining Defendants rely on <u>Holbrook v. Walters</u>, 2004 U.S. Dist. LEXIS 29461 (M.D. Pa. Feb. 26, 2004) (Vanaskie J.) and <u>Jones v. Burnett</u>, 2003 U.S. Dist. LEXIS 27121 (M.D. Pa. May 19, 2003) (Kosik, J.).

The DOC's grievance review policy states that a prisoner's grievance may include a request for compensation or other relief normally available from a court. An unreported decision previously suggested that an inmate may not pursue a claim for monetary relief when such a claim was not pursued administratively. <u>See</u> <u>Geisler v. Hoffman</u>, Civil No. 99-1971, <u>slip</u> <u>op</u>. at 4 (3d Cir. Sept. 12, 2000). The Third Circuit in <u>Spruill</u> as well as a subsequent decision, citing <u>Spruill</u>, recognized that "a failure to request monetary damages in the DOC's grievance

process at the time could not be a basis for dismissal of a damages claim for failure to exhaust." Chimenti v. Kimber, 133 Fed. Appx. 833, 836 (3d Cir. 2005). Remaining Defendants' reliance on Holbrook and Jones is therefore not persuasive.

However, the Third Circuit indicated in Spruill, that the following language: "[I]f the inmate desires compensation or other legal relief normally available from a court, the inmate shall request the relief with specificity in his/her initial grievance" would be sufficient to "give rise to a procedural default for failure to plead properly for relief." Spruill, 372 F. 3d at 234. Williams v. Varano, No. 3:CV-12-529, 2014 WL 1310346 *9 (M.D. Pa. March 31, 2014), recognized that the DOC issued an amendment on September 13, 2011 which employed that exact language suggested by Spruill.[7]

Remaining Defendants only cite two pre-Chimenti cases in support of their pending argument. They have not addressed the issue of whether the DOC administrative review policy in place when Stafford sought and exhausted three administrative grievances was of such mandatory nature as to satisfy the concerns expressed in Spruill and Chimenti. Therefore, Remaining Defendants have not

---

[7] Lucas's declaration in this matter attaches a copy of s DOC policy dated December 8, 2010 but not the September 13, 2011 amendment. See Doc. 47, p. 12.

sufficiently established that Plaintiff's failure to request monetary damages in his exhausted post-September 20, 2011 administrative grievances constitutes a procedural default, and warrants the entry of summary judgment on the basis of non-exhaustion with respect to Stafford's requests for monetary damages with respect to those claims.  As a result, this request for summary judgment will be denied.[8]

### Retaliation

Remaining Defendants' final argument contends that the exhausted retaliation claims   (work performance reports, loss of prison job, and the May 6, 2013 cell move) should be dismissed because there were legitimate penological reasons for the taking of those actions.[9]  See  Doc. 45, p. 9.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of

---

[8]  The exhausted claims to the extent that they seek non-monetary relief are not subject to dismissal.  See Williams, 2014 WL 1310346 at *9 .

[9]  An inmate does not have a protected liberty or property interest in continued prison employment.  James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir.), cert. denied, 493 U.S. 870 (1989); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975).  The right to earn wages while incarcerated is a privilege, not a constitutionally guaranteed right. Likewise, a prisoner has no justifiable expectation that he will be incarcerated in a particular prison or cell.  Olim v. Wakinekona, 461 U.S. 238 (1983).
Thus, the termination of a prison job or cell transfer by themselves are  not a sufficient basis for a civil rights claim.

satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).   Filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).  The submission of grievances is also constitutionally protected conduct.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).   Remaining Defendants do not contend that this initial prong was not satisfied. Based upon those considerations, this Court is satisfied at this juncture in the proceedings that the Rauser requirement that Plaintiff show that his constitutionally protected activity was a motivating factor for the acts of adverse action was sufficiently satisfied.

Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  Remaining Defendants similarly do no dispute that the Plaintiff's allegations satisfy this requirement.

Third, a prisoner must prove that "his constitutionally protected conduct

was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  It was previously recognized that the mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[10]  See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

Once Plaintiff has made a prima facie case, the burden shifts to the Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned.  Rauser, 241 F.3d at 334.

Remaining Defendants contend that Plaintiff's transfer to a different cell was routine.  It is also asserted that Plaintiff's unfavorable work reports and his resulting removal from his prison job were based on his disruptive and

---

[10]   Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.  Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

18

argumentative conduct during work hours.  After Stafford failed to cease his disruptive behavior and despite verbal warnings, he was removed from his job.

Remaining Defendants have provided a declaration under penalty of perjury by SCI-Dallas Major Gary Gordon who states that Plaintiff's May 6, 2013 cell move was one of 33 cell moves that same week.  See  Doc. 47, p. 90, ¶ 12. Gordon adds that Stafford was not moved to a cell that afforded less privileges or constituted an increased custody status.  Rather, he was transferred from one general population cell to another.  Furthermore, the decision to move Stafford was not remarkable and was simply one of many taking place that week based upon operational needs and would have occurred regardless of whether Plaintiff had filed a grievance.

According to a declaration under penalty of perjury by SCI-Dallas Garment Factory Foreman Ronald Scavone, Stafford's work performance was reviewed on December 10, 2013.  See id., p. 81, ¶ 4.  Plaintiff was present at this review along with other prison officials.  During that meeting it was determined that Stafford should be removed from his inmate job due to his continued disruptive behavior while working.  Scavone explains that the inmate was encouraging other prisoners to decrease their production and his attitude and relationships with peers and staff was below average.  Scavone admits that

Plaintiff's work performance was average.  Accompanying the declaration are copies of Plaintiff's employment progress reports and documents completed regarding instances when Stafford was being disruptive on the job.

In a recent decision, the Third Circuit opined that an inmate can satisfy this burden"with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a casual link." Watson v. Rozum, No. 13-3510, slip op.  at 5 (3d Cir. Aug. 23, 2016).  Based upon an application of Watson to the exhausted allegations of retaliation, the matter at hand is simply not a case where there is unusually suggestive temporal activity between Plaintiff's filing of grievances and the alleged retaliatory actions.

Even if that prong were satisfied, prison officials may still prevail if they can establish that they would have taken the same actions absent the protected conduct for reasons reasonably related to a legitimate penological interest. Remaining Defendants have provided competent supporting evidence showing that the challenged cell transfer, work reports and related loss of prison employment were actions taken for reasons reasonably related to penological interest.   In the case of the cell transfer, Plaintiff's movement to a different cell was one of 33 similar routine cell changes being undertaken during the same time

frame.  Moreover, this is not a case where Stafford was being moved to a lesser or more severe locale which could suggest a retaliatory motive.

Likewise, the loss of Stafford's prison job stemmed from the inmate's repeated disruptive behavior despite multiple verbal warnings and unfavorable progress reports.  The documents submitted by remaining Defendants support a determination that this was not a spontaneous decision, but rather one taken after affording the inmate an adequate opportunity to correct his behavior .   Based upon an application of the principles announced in Rauser and  Watson to the undisputed facts, it is apparent that the exhausted claims stem from actions by prison officials which were taken for reasons reasonably related to legitimate penological reasons.  The request for entry of summary judgment will therefore be granted.

An Appropriate Order follows.


BY THE COURT:


  s/ Matthew W. Brann
Matthew W. Brann
United States District Judge